**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| UNITED STATES OF AMERICA, | CASE NO. 14cr750-BEN |
|---|---|
| Plaintiff, | |
| vs. | ORDER DENYING MOTION TO DISMISS INDICTMENT and DENYING MOTION TO COMPEL DISCOVERY |
| ISMAEL GONZALEZ-ALTAMIRANO, | |
| Defendant. | |

Now before the Court is Defendant's Motion to Dismiss the Indictment and Motion to Compel Discovery concerning withdrawal of applications for removal (filed September 18, 2014). Upon review, this Court finds the underlying removal to be valid. Therefore, the motion to dismiss the indictment is denied and the discovery motion is denied.

**I. BACKGROUND**

Defendant is currently charged with the crime of Attempted Reentry of a Removed Alien in violation of 8 U.S.C. § 1326. From the record before the Court, it appears that there is no dispute as to the following salient facts.

Defendant is a citizen of Mexico. He has never had a lawful immigration status. Both of his parents are also citizens of, and reside in, Mexico. Defendant has had several contacts with immigration officials over the past fourteen years. On January 30, 2001, he was apprehended in the United States and afforded voluntary

1  return. One week later, on February 7, 2001, he was again apprehended in the
2  United States and again afforded a voluntary return. On July 10, 2007, after serving
3  a state jail sentence in the State of Washington, Defendant was order removed. Less
4  than one month later, on August 2, 2007, Defendant was apprehended again in the
5  United States and afforded a voluntary return. In April 2013, he was deported and
6  physically removed to Mexico following his incarceration in Washington for drug
7  and firearm crimes. On November 30, 2013, he was again apprehended in the
8  United States and returned to Mexico. Most recently, On January 12, 2014,
9  Defendant was again apprehended in the United States after crossing the All-
10 American Canal on a raft.

11    Over the same fourteen years, he has been convicted of six different crimes
12 under the laws of the State of Washington. The conviction underlying the most
13 recent deportation order, and the conviction at issue here is for a drug offense on
14 November 1, 2012 for violating Revised Code Washington § 69.50.401(1). He was
15 sentenced to serve twelve months and one day.

16    Section 69.50.401(1) states, "Except as authorized by this chapter, it is
17 unlawful for any person to manufacture, deliver, or possess with intent to
18 manufacture or deliver a controlled substance." On the same date, Defendant was
19 convicted of the crime of Alien in Possession of a Firearm in violation of Revised
20 Code Washington §9.41.171 and sentenced to twelve months of incarceration,
21 running concurrently with the drug conviction sentence. Defendant pleaded guilty
22 to both crimes in a written plea agreement.

23    The plea agreement set forth Defendant's own understanding of the crime (at
24 paragraph 11): "[Printed] The judge has asked me to state in my own words what I
25 did that makes me guilty of this crime. This is my statement: [handwritten] *On or*
26 *about July 20, 2012, in Snohomish County, Wash[ington], I did unlawfully possess*
27 *methamphetamine, a controlled substance, with intent to deliver*." (Emphasis
28 added.)

## II.  CHALLENGING THE UNDERLYING REMOVAL ORDER

Defendant has moved to dismiss the indictment pursuant to 8 U.S.C. § 1326(d).  He argues that his removal in 2013 was fundamentally unfair and violated his right to due process.[1]  He argues that his Washington state court conviction does not qualify as an aggravated felony.  And if the conviction is not an aggravated felony, then he would have been entitled to some form of discretionary relief.

The Due Process Clause guarantees an individual charged with illegal reentry under 8 U.S.C. § 1326 the opportunity to challenge a prior removal that underlies the criminal charge.  *United States v. Garcia-Santana*, 743 F.3d 666 (9th Cir. 2014).  The mechanics of such a challenge are the product of thousands of judicial decisions over several decades.  *Garcia-Santana* fairly states the current state of the law and is repeated here for reference:

> Section 1326(d) codifies this principle.  It authorizes collateral attack on three conditions: (1) that the defendant exhausted available administrative remedies; (2) that the removal proceedings deprived the alien of the opportunity for judicial review; and (3) that the removal order was fundamentally unfair.  Removal is fundamentally unfair, in turn, if (1) a defendant's due process rights were violated by defects in his underlying removal proceeding, and (2) he suffered prejudice as a result of the defects.  An immigration official's failure to advise an alien of his eligibility for relief from removal, including voluntary departure, violates his due process rights.  An alien who has been convicted of an aggravated felony is not eligible for voluntary departure in lieu of removal. [The Defendant's] removal order stated that she was ineligible for any relief, because she had previously been convicted of an aggravated felony.  This [case] turns on the accuracy of that statement.  The government . . . is challenging the grant of collateral relief . . . on the ground

---

[1] There were three removals.  The April 2013 removal order and the December 2013 expedited removal order both relied on treating the 2012 state drug conviction as a conviction for an aggravated felony.  Consequently, this motion focuses on the correctness of that characterization.  The Government does not contest the claim that the 2007 deportation cannot support this §1326 prosecution.

> that [the Defendant's] conviction [ ] qualifies as an aggravated felony. If [Defendant's] previous conviction . . . does *not* qualify as an aggravated felony, then her prior removal order was constitutionally invalid and cannot support charges under § 1326. If the conviction *does* qualify as an aggravated felony, then her prior removal order is proper and prosecution may proceed.
>
> To determine whether an offense is an aggravated felony, we use the categorical and modified categorical approaches of *Taylor v. United States,* 495 U.S. 575 (1990), and *Shepard v. United States,* 544 U.S. 13 (2005). Under the categorical approach, we look not to the facts of the particular prior case, but instead to whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding aggravated felony. The generic definition of an offense is determined by the contemporary usage of the term. A state offense is a categorical match with a generic federal offense only if a conviction of the state offense necessarily involved facts equating to the generic federal offense. That is, an offense is an aggravated felony if the full range of conduct covered by the [state criminal statute] falls within the meaning of the relevant definition of an aggravated felony. By contrast, where the state statute of conviction sweeps more broadly than the generic crime, a conviction under the law cannot count as an aggravated felony, even if the defendant actually committed the offense in its generic form.

*Id.* at 670-72 (internal quotation marks and citations omitted).

A drug trafficking offense is an aggravated felony. However, Defendant argues that his conviction for violating Revised Code Washington § 69.50.401(1) is not the equal of the federal generic drug trafficking offense. He also argues that the conviction statute is an indivisible statute rendering the state conviction ineligible for use of the modified categorical approach. If the modified categorical approach may be used, then the plea agreement and other judicially noticeable documents make clear that Defendant's conviction qualifies as a generic federal drug trafficking offense and thus an aggravated felony which legally supports his 2013 removal order. That in turn, would undermine his motion to dismiss. This Court finds that

the modified categorical approach may be used; under that approach Defendant's state drug conviction is an aggravated felony.

Last year, the Supreme Court determined that a state court conviction for simple possession of a small amount of marijuana without remuneration does not qualify as an aggravated felony. *See Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013). *Moncrieffe* teaches,

> The INA defines "aggravated felony" to include a host of offenses. §1101(a)(43). Among them is "illicit trafficking in a controlled substance." §1101(a)(43)(B). This general term is not defined, but the INA states that it "includes a drug trafficking crime (as defined in section 924(c) of title 18)." In turn, 18 U.S.C. §924(c)(2) defines "drug trafficking crime" to mean "any felony punishable under the Controlled Substances Act," or two other statutes not relevant here. The chain of definitions ends with §3559(a)(5), which provides that a "felony" is an offense for which the "maximum term of imprisonment authorized" is "more than one year." The upshot is that a noncitizen's conviction of an offense that the Controlled Substances Act (CSA) makes punishable by more than one year's imprisonment will be counted as an "aggravated felony" for immigration purposes. A conviction under either state or federal law may qualify, but a "state offense constitutes a 'felony punishable under the Controlled Substances Act' only if it proscribes conduct punishable as a felony under that federal law."

*Id.*, 133 S. Ct. at 1683 (quoting *Lopez v. Gonzales*, 549 U.S. 47, 60 (2006)). *Moncrieffe* is not controlling because this case is not about a conviction for simple possession of marijuana. But *Moncrieffe*'s analysis of INA § 1101(a)(43)(B) applies to this case. This case is about the felony possession of methamphetamine with the intent to deliver and whether that state conviction constitutes a federal drug trafficking crime -- and thus an aggravated felony.

The general proposition that a conviction under Revised Code Washington § 69.50.401(1) can qualify as an aggravated felony has been decided. The United States District Court for the Eastern District of Washington, a court more familiar

with Washington state law than this Court, determined that a § 69.50.401(1) conviction can be an aggravated felony using the modified categorical approach. *See United States v. Copas-Villegas*, Case No. CR-08-21-RHW, *slip op.*, 2012 WL 4755414 (E.D. Wash. 2012), *aff'd*, 566 Fed. Appx. 556 (9th Cir. 2014). Also using the modified categorical approach *de novo*, the Ninth Circuit's unpublished memorandum disposition affirming the district court also looked to the Defendant's plea agreement, which is similar to the plea agreement in this case, and determined that a Washington § 69.50.401(1) conviction qualified as an aggravated felony.

Faced with this precedent, this Defendant today makes a slightly different argument. He argues that implied in every Washington § 69.50.401(1) offense is an aiding an abetting theory. He then argues two novel claims. First, he asserts that the state law of *mens rea* for aiding an abetting is lower than the *mens rea* for aiding and abetting for the generic federal drug trafficking offense. Second, he contends that the state statute is indivisible and because it is indivisible, it is not subject to analysis using the modified categorical approach.

He offers no case law for either of these claims.

In addition to the novelty, one problem with this argument is that it is based on little more than a theoretical possibility. It is not based on a realistic probability. That is a problem because to be meritorious, the aiding and abetting *mens rea* argument must be a realistic probability, according to the Supreme Court.

> Moreover, in our view, to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. *It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.* To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.

- 6 -

*Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) (emphasis added). Defendant, here, has not shown that § 69.50.401(1) was applied to his own case to convict him on an implied aiding and abetting theory. So, the first avenue for showing a realistic probability is a dead end. *Id.* ("To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case."). The second avenue is also a dead end because Defendant has not pointed to other cases in which the Washington state courts applied this statute in the special (nongeneric) manner for which he argues. *Id.* ("But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.").

Knowing this, Defendant hopes for an exception to swallow the Supreme Court rule and takes the position that he may disregard *Duenas-Alvarez*. He may disregard it, it is argued, because the Ninth Circuit disregarded *Duenas-Alvarez* in evaluating an Oregon burglary statute.

In *United States v. Grisel*, 488 F.3d 844 (9th Cir. 2007) (en banc), the Ninth Circuit bypassed the "reasonable probability" showing by finding no legal imagination was required. The reason for *Grisel*'s conclusion was that Oregon's burglary statute used text that "expressly included in its definition that which the Supreme Court excluded from the generic, federal definition of burglary." *Id.* at 850. It broadened the reach of its burglary offense by, "expressly recognized the ordinary, generic meaning of burglary and consciously defin[ing] second-degree burglary more broadly by extending the statute to non-buildings." *Id.* With the text of the Oregon burglary statute and the Supreme Court's past decision on the generic burglary statute in hand, the Ninth Circuit needed no legal imagination. Fair enough.

This is not the case with Washington's § 69.50.401(1) offense. There the text of § 69.50.401(1) does not extend beyond the federal generic drug offense to include *by its text* simple possession offenses or aiding and abetting offenses. As a result,

- 7 -

the Supreme Court's cautionary instruction in *Duenas-Alvarez* cannot be ignored. Defendant must show that his proposed scenario is a realistic probability. A theoretical possibility is not enough.

Instead of looking to the text of the Washington statute of conviction, Defendant goes out on a limb and points to a different statute: Washington's statute on accomplice liability (Revised Code Washington § 9A.08.020). That is not what the Ninth Circuit did in *Grisel*. It looked at the text of the statute of conviction (*i.e.*, the burglary statute). With the overbroad text and the Supreme Court's generic definition, *Grisel* needed no hypothetical unusual case.

Defendant, in contrast, asks the Court to go beyond the Washington statute of conviction, look at a different statute, find that it impliedly applies to every offense, and find the application of the implication carries the conviction beyond the federal generic drug trafficking offense. To borrow a phrase, "this argument requires the sort of theoretical possibility that was cautioned against in *Gonzalez v. Duenas-Alvarez*." *See United States v. Sandoval-Orellana*, 714 F.3d 1174, 1179 (9th Cir. 2013) (affirming denial of motion to dismiss under § 1326(d)). It is the "ordinary case" that is the "proper focal point of a court's inquiry." *Id.* Unfortunately, like Mr. Duenas-Alvarez, Defendant here has not made his showing. So, this Court cannot find that the Washington courts' application of aider and abettor liability creates a subspecies of the Washington drug trafficking crime that falls outside the federal generic definition of a drug offense.

This is not to say that Defendant loses on a technicality. Even on the merits his claim is undermined by the Supreme Court's own research on aider and abettor liability. The Supreme Court teaches,

> The common law divided participants in a felony into four basic categories: (1) *first-degree principals*, those who actually committed the crime in question; (2) *second-degree principals,* aiders and abettors present at the scene of the crime; (3) *accessories before the fact*, aiders and abettors who helped the principal before the basic criminal event took place; and (4) *accessories after the fact*, persons

- 8 -

> who helped the principal after the basic criminal event took place. In the course of the 20th century, however, American jurisdictions eliminated the distinction among the first three categories.
>
> Indeed, every jurisdiction – all States and the Federal Government has "expressly abrogated the distinction" among principals and aiders and abettors who fall into the second and third categories. The Solicitor General has presented us with a comprehensive account of the law of all States and federal jurisdictions as well. And we have verified that these jurisdictions treat similarly principals and aiders and abettors who fall into the second or third common-law category.

*Duenas-Alvarez*, 549 U.S. at 189-90 (citations omitted). The Supreme Court concluded that every state and the federal government treats aiders and abettors similarly. It then applied its conclusion to a California statue of conviction and the generic federal theft offense.

> Since criminal law now uniformly treats those who fall into the first three categories alike, "the generic sense in which" the term "theft" is now used in the criminal codes of most States, *Taylor* covers such "aiders and abettors" as well as principals. And the criminal activities of these aiders and abettors of a generic theft must themselves fall within the scope of the term "theft" in the federal statute.

*Id.* (citations omitted). This Court has little doubt that had the question been the generic drug trafficking offense described in § 1101(a)(43)(B), and the statute of conviction Washington's § 69.50.401(1), the conclusion would be the same. In other words, since modern American criminal law now uniformly treats aiders and abettors alike, the criminal activities of Washington state drug trafficking aiders and abettors fall with the scope of the generic drug trafficking offense in the federal statute.

Undaunted, Defendant has done his own fifty state review of aider and abettor statutes. An ambitious undertaking, to be sure. He arrives at a different conclusion than did the Supreme Court. He says not every jurisdiction treat aiders and abettors and principals similarly. Specifically, Defendant concludes that Washington does

- 9 -

not treat aiders and abettors similarly to principals or aiders and abettors in other jurisdictions. It is worth repeating the words of the Supreme Court, "[t]he Solicitor General has presented us with a comprehensive account of the law of all States and federal jurisdictions as well. And we have verified that these jurisdictions treat similarly principals and aiders and abettors who fall into the second or third common-law category." *Id.* Perhaps Defendant's more nuanced view is correct. Nevertheless, the Supreme Court's decision makes sense and binds this Court. Consequently, this Court cannot find that Washington's law is "somehow special." *Id.* at 191. Even if it could, it would be based upon improperly hypothesizing about the unusual case, rather than the ordinary case which is to be the focus. *Sandoval-Orellana*, 714 F.3d at 1179 (quoting *James v. United States*, 550 U.S. 192, 208 (2007)).

Assuming for the sake of argument that implied aiding and abetting liability makes the drug offense overbroad, and therefore not categorically an aggravated felony, the remaining issue is whether the Washington statute is divisible. Defendant asserts that it is indivisible. He then cites Washington state law cases and jury instructions regarding accomplice liability. The argument misses the mark, however, as the statute of conviction is the focus of the aggravated felony analysis. Here, the statute of conviction is the statute criminalizing the possessing of controlled substances with the intent to manufacture or deliver, *i.e.* § 69.50.401(1). Defendant seems to be claiming that the aiding and abetting statute is implicitly part of § 69.50.401(1) and together they create an indivisible statute. Defendant cites no case in support.

This Court finds that Defendant's approach is out of sync with conventional *Taylor/Shepard/Descamps* analysis. *Descamps v. United States*, 133 S. Ct. 2276 (2013), says that the modified categorical approach may be used for a divisible statute and describes that as "one that sets out one or more elements of the offense in the alternative." 133 S. Ct. at 2281. An indivisible statute, on the other hand, is

"one not containing alternative elements." *United States v. De La Torre-Jimenez*, No. 13-50438, *slip op.*, 2014 U.S. App. LEXIS 21317, *5 (9th Cir. Nov. 7, 2014) (quoting *Descamps*) (not following *Rendon v. Holder*, 764 F.3d 1077 (9th Cir. 2014)).

Defendant's argument that the Washington's aiding and abetting statute is implicitly part of § 69.50.401(1) and together they create an indivisible statute, is novel. But if the separate statute is imported into the statute of conviction, the two approaches to criminal liability are obviously alternative elements. Put simply, a § 69.50.401(1) conviction rests on principal liability. Aider and abettor liability would rest on § 9A.08.020, an obviously alternative element. As the Ninth Circuit pointed out, a statute that imposes criminal liability in the alternative on principals as well as accessories is a divisible statue because it is impossible for the jury to find a defendant violated the alternative parts of the statute *simultaneously*. *See Rendon v. Holder*, 764 F.3d 1077, n. 11 (9th Cir. 2014). Here, the statue is divisible and the modified categorical approach may be used.

This conclusion finds support in the fact that another district court and the Ninth Circuit have used the modified categorical approach in similar cases. *See Copas-Villegas*, Case No. CR-08-21-RHW, *slip op.*, 2012 WL 4755414 (E.D. Wash. 2012) (using modified categorical approach where Defendant similarly claimed accomplice liability under § 9A.08.020 would make § 69.50.401(1) overbroad), *aff'd*, 566 Fed. Appx. 556 (9th Cir. 2014) (using modified categorical approach during *de novo* review and assuming for purposes of argument that § 69.50.401(1) is categorically overbroad); *see also Duenas-Alvarez v. Holder*, 733 F.3d 812 (9th Cir. 2013) (on remand from the Supreme Court, using the modified categorical approach where defendant claimed California vehicle statue could impose criminal liability on both principals and accessories after the fact).

Using the modified categorical approach in this case results in the uncontested conclusion that Defendant's conviction qualifies as an aggravated felony for

purposes of INA §1101(a)(43)(B). That finding, to again borrow a phrase, "dooms any claim for relief based on a collateral attack of a predicate removal order in a prosecution for illegal reentry under 8 U.S.C. § 1326." *United States v. Galarza-Bautista*, No. 13-50517, *slip op.*, 2014 U.S. App. Lexis 22527 (9th Cir. Dec. 1, 2014) (mem. disposition). Because the Government was correct to deem the state conviction an aggravated felony, the removal orders were not fundamentally unfair and Defendant was ineligible for discretionary relief. As a result, the follow-up argument about whether he would have had a plausible claim for relief is moot.

### III.  CONCLUSION

Because his 2013 removal was based upon an aggravated felony, Defendant's Motion to Dismiss the Indictment is hereby denied. Because Defendant had no plausible claim to discretionary relief, his discovery request for statistical data is also denied.

DATED: December 12, 2014,

_____
Hon. Roger T. Benitez
United States District Judge